UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

JAMES A. ENGLISH,)
    Plaintiff(s);)
)
-vs.-)    No. CV 95-P-2237-S
)
POLO RALPH LAUREN; ATCHISON,)
TOPEKA & SANTA FE RAILWAY CO.;)
AND BURLINGTON NORTHERN
RAILROAD, CO.,
    Defendant(s).

FILED MAR 12 1997

ENTERED MAR 1 2 1997

## OPINION

For the following reasons, the Defendants' Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART. The Motion is granted as to the Plaintiff's claims against the Atchison, Topeka, & Santa Fe Railway, Co. ("ATSF"). The Motion is denied as to the claims against the Burlington Northern Railroad, Co. ("BN").

### Facts[1]

On August 31, 1993, while at work at the Burlington Northern rail yard, the Plaintiff James English ("English") was injured when he was thrown from the cab of the side-lift crane he was operating. At the time of the accident, he was operating the crane to unload a container from a rail car. The container which had been transported from California to Alabama by ATSF had been loaded in California by Leadtec California, Inc. The bill of lading stated the container's weight as 43,744 pounds whereas the container actually weighed significantly more. There is no evidence that the container itself was defective or that a visual inspection of the container would

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the Plaintiff.

have revealed the true weight of the container.

It is undisputed that English was employed by Eagle Systems, Inc., a BN contractor. However, English worked in the BN rail yard. The crane that he was operating was owned and maintained by BN. BN's clerks provided English with lists of which containers to load and unload and where to put the containers. BN's clerks maintained radio communication with English making adjustments and changes in their directions about unloading the trains. English attended BN safety meetings and was issued BN personnel and safety manuals. English received his paycheck, took his breaks and ate his meals in the BN trailer located in the rail yard.

On several occasions prior to the day on which English was injured, BN had been informed that the crane English was operating was "cutting too sharp." In addition, the crane's scale had been disconnected. BN had been informed that overloaded containers were being delivered to the rail yard. BN did not weigh the containers before they entered the yard. BN relied on the bills of lading for determining the weight of the containers. BN was aware that the bills of lading were inaccurate.

English filed a complaint against Polo Ralph Lauren,[2] ATSF and BN. The claims against BN consist of claims under the Federal Employers Liability Act ("FELA") for negligence in providing inadequate machinery for unloading the container and generally for failing to provide a safe workplace. English also claims common law negligence and wantonness against BN. The claims against ATSF consist of allegations of common law negligence and wantonness for failing to warn him about the weight of the container and failing to weigh and inspect the container. Both

---

2. Defendant Polo was granted summary judgment on all the Plaintiff's claims on January 28, 1997.

BN and ATSF have filed a Motion for Summary Judgment.

## Analysis

A. Claims against ATSF

ATSF argues that it served merely as a middleman in the transportation of the container from Los Angeles to the BN Northern East Thomas Yard. There is no allegation that a visual inspection of the outside of the container would have revealed that it was overloaded. ATSF argues that it did not owe English a duty to warn him because they had no duty to determine what type of machinery would be used to remove the container. ATSF argues that the container was not overloaded for the purpose of transporting it. In addition, English makes no allegation that ATSF was his employer.

English argues that ATSF had a duty to inspect the rail car at interchanges for defects. English relies primarily on *Butler v. Norfolk Southern Rwy. Co.*, 140 F.Supp. 601 (D.C.N.C. 1956) for the proposition that the connecting carrier has a duty inspect. However, the *Butler* court's entire holding is that where the connecting carrier received a sealed container, it had a duty to inspect the car but this duty did not include breaking the seal and looking inside the car. *Id.* at 604.

The evidence that has been submitted does not indicate that ATSF had actual knowledge that the container was overloaded. The evidence does not indicate that English is even arguably an employee of ATSF which might give rise to certain duties incumbent upon employers. The evidence does not indicate that a visual inspection of the container would have revealed that the bill of lading was inaccurate. The evidence does not indicate that the container itself was defective. The evidence does not indicate that ATSF knew what type of equipment would be used

3

to unload the container. Therefore, based on the evidence submitted, ATSF's Motion for Summary Judgment is due to be granted in as much as no genuine issue of material fact remain as to the breach of any duty owed to English.

English admits in his brief that there is no genuine issue of material fact as to the claim for wantonness. Therefore, ATSF's Motion for Summary Judgment is due to be granted on the wantonness claim.

B. Claims against BN

Based on the substantial evidence submitted by English, it is clear that genuine issues of material fact are presented as to whether English was the employee of BN or an independent contractor as well as whether BN was negligent in its own right. Therefore, BN's Motion for Summary Judgment as to the Plaintiff's claims is due to be denied.

Dated: March 11, 1997            _____
                                 Chief Judge Sam C. Pointer, Jr.

Service List:
  Mr. Monroe Dykes Barber, Jr.
  Mr. Charles E. Sharp
  Mr. Turner B. Williams
  Ms. Theresa S. Jones